**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**AARON EVANS**

                                            **CIVIL ACTION**

**VERSUS**

                                            **NO. 08-211-FJP-CN**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, July 8, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**AARON EVANS**

**CIVIL ACTION**

**VERSUS**

**NO. 08-211-FJP-CN**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Aaron Evans seeks judicial review of a final decision of the Commissioner of Social Security that denied his claim for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act).[1]  In making that final decision, the Administrative Law Judge (ALJ) reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f).[2]

### FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed his DIB application under Title II of the Act on August 2, 2004. (Tr. 60-63.)  Plaintiff claimed an inability to work since May 5, 2004, due to neck, shoulder, back, arm, and hand injuries impacting on his ability to sit, stand, and lift. (Tr. 90-91.)  This application was denied on October 29, 2004, and the plaintiff filed a timely request for hearing.

---

[1]  42 U.S.C. § 423(d)(1)(A).

[2]  Brown v. Apfel, 192 F. 3d 492, 497, 498 (5th Cir. 1999); Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

The administrative hearing was held on October 2, 2006, and Plaintiff was represented by counsel.  On March 23, 2007, the ALJ issued a decision finding plaintiff not disable since he was capable of performing other work existing in the national economy (Tr. 30-31.).  He also found that plaintiff met the insured status requirements through September 30, 2007, and that he has not engaged in substantial gainful activity at any time relevant to this decision. (Tr. 27.)  Plaintiff was 45 years of age at the time of the hearing and therefore, was considered to be a younger individual with a high school degree in a regular classroom setting and vocational training as a truck driver (Tr. 30, 96, 305-306.)[3]

The plaintiff was found to have the severe impairments of degenerative changes of the cervical and lumbar spines and a pain disorder. The ALJ further found that none of plaintiff's impairments, either singly or in combination, met or medically equaled any of the listed impairments under Appendix 1 to Subpart P of Regulations No. 4. (Tr. 27.)  The ALJ also found that while these impairments could be expected to produce plaintiff's alleged symptoms, his statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible. (Tr. 30.) Further, the ALJ determined that plaintiff had the residual functional capacity (RFC) to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday. His ability to push and pull is limited by the weight he is able to lift and carry.  He is able to perform unskilled, entry level work commensurate with his intellectual capacity and

---

[3]  20 C.F.R. § 404.1563(c) (a claimant under age 50 is considered to be younger individual); 20 C.F.R. § 404.1564(b)(4) (high school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at the 12th grade level and beyond.)

consistent with the unskilled occupations noticed in Appendix 2 of the Regulations. (Tr. 28.) Under this RFC the ALJ found that plaintiff could not perform his past relevant work as a truck driver.  Therefore, based upon a direct application of the Medical-Vocational Guidelines, the ALJ found that plaintiff could perform one or more occupations existing in significant numbers in the national economy (Tr. 30-31.)[4]

On March 28, 2007, plaintiff requested review of the ALJ's decision.  On October 26, 2007, the Appeals Council concluded that no basis existed for review.  (Tr. 16-18.) Plaintiff's counsel then forwarded written arguments offered in support of plaintiff's request for review to the Appeals Council on November 19, 2007, because no mention of this submission was made in it's October 26, 2007 denial of review.  After considering this material, the Appeals Council again denied review, and the decision became the final decision of the Commissioner, which decision is now before this Court. (Tr. 4-6.)

## ANALYSIS

Judicial review of a final decision of the ALJ denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[5]  In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21 (directs a finding of "not disabled" for a younger individual who is a high school graduate or more with nontransferable skills, but who can perform the full range of light work.)

[5] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

4

not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  Id.  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.  Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[6]  Only if the plaintiff proves that he is no longer capable of performing his past relevant work does the burden shift to the Commissioner to establish that the plaintiff, nonetheless, has the ability to engage in other substantial gainful activity.[7]

In the present case, plaintiff was found not disabled during the relevant period at step five of the sequential analysis because the ALJ found that while he did not possess the RFC to perform his past relevant work, he did possess the RFC to perform other jobs in the national economy.

A review of the ALJ's decision and the medical records reveal that plaintiff, while working as a truck trailer spotter on May 2, 2004, was injured when part of a load had shifted and a number of boxes fell on him. (Tr. 122.)  On May 15, 2004, a cervical x-ray noted multiple levels of disc space narrowing but no fracture. (Tr. 238.)  Plaintiff was evaluated by

---

[6] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[7] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

Dr. Thad S. Broussard on June 8, 2004 for complaints of right heal pain and neck, shoulder and back pain.  Upon physical examination, Dr. Broussard opined that plaintiff had generalized cervical spinal tenderness with mild restriction of the right shoulder girdle, and that the upper extremities failed to note motor point tenderness, weakness or sensory loss. Plaintiff had appropriate grip and pinch strength and deep tendon upper reflexes were diminished bilaterally. (Tr. 122-123.)

Dr. Broussard further opined that plaintiff's lumbar spine examination revealed tenderness with limited flexion and extension, and limited right and left bending absent any spasm.  There was no evidence of definite tension signs on the straight leg raising test and foot and ankle flexion and dorsi-flexion were appropriate.  Some weakness was noted on the right heel bone but not on the left and no swelling or gross deformity was noted.   Dr. Broussard's diagnosis was cervical and lumbar sprain/strain syndrom, acute contusion of the right shoulder girdle, and right foot sprain.  He recommended medication, therapy, and MRI scans of both the neck and back. (Tr. 123.)  Plaintiff underwent an MRI on June 15, 2004, which indicated diffuse cervical spondylosis (degenerative disk disease) with disc bulging and osteophyte formation (a bony spur). (Tr. 124.)[8]  The MRI also showed narrowing at multiple levels and a small disc herniation at C6-7, but no displacement or compression of the spinal cord. (Tr. 124, 127, 231.)   Dr. Broussard saw plaintiff again on June 22, 2004, July 13, 2004, July 19, 2004, and August 3, 2004, all of which were follow-up visits.   Dr. Broussard referred plaintiff for a functional capacity evaluation (FCE) to determine his

---

[8] See *Orthopaedic Dictionary*, at 370 and 291, respectively.

ability to perform the duties of any occupation.  This evaluation was performed on October

5, 2004, by Scott McClelland, PT LA, who found that plaintiff had the ability to perform

work at the sedentary physical demand level. (Tr. 29, 205-206.) Dr. Broussard saw plaintiff

again on October 15, 2004, and stated that he had read the FCE dated October 5, 2004, and

that it showed that "....he [plaintiff] does have abilities and restrictions.  He certainly can

work within the confines of the F.C.E." (Tr. 231.)  On November 12, 2004, Dr. Broussard

opined that plaintiff was at maximum medical improvement and beyond symptomatic and

supportive care, and that he had no new recommendations.  He further stated that "I think he

is able to work within the confines of the F.C.E.  Certainly he needs to modify his activities

in his everyday life."  Dr. Broussard again examined plaintiff in January 2005, and opined

that from an orthopedic standpoint there was nothing more he had to offer. (Tr. 231.)  This

is the extent of plaintiff's orthopaedic treatment for his severe impairment of degenerative

changes of the cervical and lumbar spines.

Plaintiff also underwent a neurological evaluation with Dr. Rodney E. Hillis on July

27, 2004.  Dr. Hillis noted that plaintiff was alert, oriented, and his attention span,

concentration and general fund of knowledge, and recent and remote memory were all

normal.  He also noted that his strength was normal in all four limbs, and that he had no

atrophy and his tone was normal.  A sensory examination revealed a significant decrease in

sensation to light touch and pinprick in the deltoid region at about C5 bilaterally.  The rest

of the sensory exam was unremarkable.  Dr. Hillis' coordination examination noted that

plaintiff made large amplitude shaking movements of his arm when attempting to flex his

elbow and while performing the finger-nose-finger movements.  Otherwise, all of plaintiff's other fine-finger movements and rapid-alternating movements were intact.   Upon a musculoskeletal exam, Dr. Hollis found decreased passive neck range of motion, however there were no limitations of motion in plaintiff's back, nor any tenderness to palpation. Plaintiff's straight leg raising test was negative, but his wrists noted positive Tinel signs on the right but negative on the left, which suggested right sided carpal tunnel syndrom.  Dr. Hillis recommended conservative treatment at this time with additional testing. (Tr. 126-128.)

Plaintiff again underwent two MRI scans of the spine on August 18, 2006.  The MRI of the lumbar spine indicated broad based disc bulging but no nerve root compromise or foraminal stenosis, and some disc space narrowing at L5-S1.  The MRI of the cervical spine noted broad based osteophyte formation at multiple levels with narrowing of the foramens (Tr. 273.)

Plaintiff also underwent another functional capacity evaluation on May 19, 2005.  It seems that plaintiff, while he does not specifically state it in his appeal, believes that the ALJ was in error in relying on this second FCE in making his RFC determination because it was not available for inclusion into the record.[9]  The first FCE dated October 5, 2004 (performed five months after the accident)[10] recommended that Plaintiff perform work-related activities at the sedentary exertional level. (Tr. 205-206.)  The second FCE (performed about a year after the accident) concluded that plaintiff could perform work at the sedentary to light

---

[9]  Plaintiff's brief, p. 3-4.

[10]  This is the same functional capacity evaluation discussed by Dr. Broussard in October and November of 2004.

exertional level. (Tr. 287-288.)   The record indicates that the May 19, 2005 FCE document

does indeed exist and was reviewed and discussed by Dr. John E. Clark, who, in May and

June 2005, did not report any objection to the conclusions found in the report.[11]  Dr. Clark

also discussed this FCE report with plaintiff on July 21, 2005, where he writes in his notes:

> Functional capacity evaluation was found to be acceptable for sedentary to
> light duty.   Patient was educated on this as patient would need breaks
> throughout the day, but this would be some type of secretarial versus desk
> work. Patient voiced understanding. Patient will continue on his current work
> status. (Tr. 286.)

Dr. Clark treated plaintiff for a pain disorder and nowhere in his records does he object to the

functional capacity report which suggested that plaintiff had the ability to perform work at

the sedentary to light duty level.  While the specific document was not before the ALJ, it is

clear from the decision that the ALJ considered the conclusions found in the May 2005 FCE,

as well as those found in the October 2004 FCE, together with other pertinent and relevant

evidence contained in the record to determine the plaintiff's RFC.  The ALJ's decision refers

to both FCEs on page five of the decision, where he states: "Though the full report has not

been made available to the Administrative Law Judge, Dr. Clark described the FCE as

documenting functioning at the sedentary to light duty level." (Tr. 29 and Dr. Clark's records

at 287-288.)  Further, the Fifth Circuit has held that while the ALJ has a duty to fully and

fairly develop the record relative to a claim for disability benefits, reversal is not required

when evidence is missing if there is still ample evidence from which a determination may be

---

[11]  Tr. 288 (May 25, 2005 visit), "Functional Capacity Evaluation was also completed on May 19, 2005." Tr. 287 (June 21, 2005 visit), "We also reviewed his Functional Capacity Evaluation.  This study showed him to be functioning at a sedentary to light duty level."

made.[12]  Here, the ALJ had substantial evidence to make an informed decision relating to plaintiff's RFC (physical and mental medical evidence as well as plaintiff's own testimony) and plaintiff cannot demonstrate prejudice with regard to this document since the ALJ did, in fact, consider the document in making his determination.

Given the above orthopaedic and neurological medical evidence and the two FCEs, the ALJ found that plaintiff suffered from a severe impairment of degenerative changes in the lumbar and cervical spine, however the impairment did not meet or equal a listed impairment.  Plaintiff does not dispute that these impairments do not meet a listed impairment, nor does he discuss the meeting of a specific impairment in his appeal.

Plaintiff does argue, however, that the ALJ committed reversible error in determining his residual functional capacity.[13]  In support of this argument, plaintiff states that the ALJ did not follow the guidelines of Social Security Ruling (SSR) 96-8p in making his RFC determination because he did not include a narrative discussion that described how the evidence supported each conclusion; he did not cite to specific medical facts and non-medical evidence; he did not discuss why the reported symptom-related functional limitation and restriction can or cannot reasonably be accepted as consistent with the medical and other evidence; and he did not consider and address medical source opinions where there is a

---

[12]  Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)(this court will not reverse a decision of the ALJ for failure to fully and fairly develop the record unless the claimant demonstrates that he or she was prejudiced by the ALJ's failure).

[13]  Residual functional capacity is the most a plaintiff can do despite the functional limitations and restrictions caused by his medically determinable impairments, and it is based upon all the relevant evidence, including medical records and observations of treating physicians and other, as well as the plaintiff's own descriptions of his limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c); *Social Security Ruling (SSR) 96-8p, Policy Interpretation Ruling Title II and XVI: Assessing Residual Functional Capacity In Initial Claims*, 1996 WL 374184 at *2-3,5.

conflict.[14]  Plaintiff sets forth those portions of SSR 96-8p correctly, however a reading of the decision shows that the ALJ does, in fact, give narratives relative to how the evidence supported his conclusions.  The ALJ stated that in making his RFC finding, he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence based upon the requirements of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p.[15]  He further stated that he considered the opinion evidence in accordance with the regulations and SSRs 96-2p, 96-5p and 96-6p.[16]  The ALJ then discussed the medical records and opinions of the following treating physicians: Dr. Zimmermann, Dr. Broussard, and Dr. Clark; he discussed the two functional capacity evaluations; he discussed plaintiff's daily activities along with plaintiff's testimony; and, the ALJ also gave rationales as to why he did not agree with certain aspects of their respective conclusions and/or credibility.  The ALJ stated that given the lack of documentation in the medical records of any disc herniation or surgical lesion and looking at the record as a whole, including the testimony of the plaintiff, plaintiff's true functional capacity is at the light level.  Further, the agency's regulations and case law establish that the determination of a plaintiff's

---

[14] Plaintiff's appeal p. 3.

[15] 20 C.F.R. 404.1529, **How we evaluate symptoms, including pain**; SSR 96-4p, *Policy Interpretation Ruling Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Non Exertional Limitations*; and SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.*

[16] SSR 96-2p, *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*; SSR 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*; and SSR 96-6p, *Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence.*

residual functional capacity is the sole responsibility of the ALJ.[17]  Also, social security regulations do not require an ALJ to make any particular residual functional capacity finding if the evidence does not support such a conclusion.[18] Therefore, the Court finds that the ALJ followed the proper legal standards, including the requirements of SSR 96-8p in determining plaintiff's RFC.

With regard to plaintiff's alleged mental impairment, plaintiff argues that while the ALJ found that he had a medically determinable "severe" mental impairment, the ALJ's RFC determination did not fully consider the impact of this impairment.  The Court finds, however that the ALJ thoroughly discussed and evaluated the medical records of Dr. Zimmermann, plaintiff's treating physician, and also considered the Psychiatric Review Technique Assessment performed by a Disability Determination Services (DDS) physician on October 27, 2004, covering a period of May 5, 2004 to October 26, 2004. (Tr. 208-221.)

The Psychiatric Review Technique assessment indicated that plaintiff suffered from an anxiety related disorder/dissociative disorder (Listing 12.06), and an affective disorder/depressive disorder (Listing 12.04).  The assessment also indicated that plaintiff's impairments were severe but not expected to last 12 months.  In rating plaintiff's functional limitations with respect to his mental impairment, plaintiff had no limitations on activities of daily living; maintaining social functioning and maintaining concentration, persistence,

---

[17]  20 C.F.R. § 404.1546(c); Ripley v. Chater, 67 F.3d 552, 552 (5th Cir. 1995).

[18]  Id. (the Agency "...will assess your residual functional capacity based on all the relevant medical and other evidence.")

or pace, and no episodes of decompensation.  The DDS physician further found that plaintiff

did not establish the presence of the "C" criteria which is one of the criteria for finding a

mental impairment under Listing 12.00.  Plaintiff cannot meet the "C" criteria for either

listing 12.04 or 12.06.[19]  The Fifth Circuit has held that in order to meet a listed impairment,

a plaintiff must show that he meets all the requirements of a listed impairment.[20]

Plaintiff's treating physician, Dr. Marc L. Zimmermann, Ph.D., M.S. began treatment

of plaintiff on June 2, 2005.  This initial evaluation indicated that plaintiff's speech was clear

and easily understood, no outward signs of psychotic processes, attention and concentration

were adequate, and there was no evidence of impulse control problems during the evaluation.

(Tr. 268.)   Plaintiff described his mood to Dr. Zimmerman as "fairly good," which he

indicated he is in most of the time; he denied hallucinations and did not appear delusional;

he denied current or past suicidal ideation, but reported passive suicidal thoughts as a result

---

[19]   Listing 12.04C is met when an individual has a medically documented history of a chronic affective disorder of
at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with
symptoms or signs currently attenuated by medication or psycho social support and one of the following:
　　　　1.　　Repeated episodes of decompensation, each of extended duration; or
　　　　2.　　A residual disease process that has resulted in such marginal adjustment that even a minimal increase
　　　　　　　in mental demands or change in the environment would be predicted to cause the individual to
　　　　　　　decompensate; or
　　　　3.　　Current history of 1 or more years' inability to function outside a highly supportive living
　　　　　　　arrangement, with an indication of continued need for such an arrangement.
 20 C.F.R. Pt. 404, Subpt. P, App. 12.04C. Affective Disorders.

　　　　　　Listing 12.06C is met when an individual's anxiety related disorders resulting in complete inability to function
independently outside the area of one's home. 20 C.F.R. Pt. 404, Subpt. P, App. 12.06C. Anxiety Related Disorders.

[20]   Sullivan v. Zebley, 493 U.S. 521, 530 (1990)(claimant must manifest all the specified criteria of a particular listing
to qualify for a disability under that listing.)

of his pain. (Tr. 269.)  Dr. Zimmermann performed a personality assessment of plaintiff and opined:

> ... the respondent endorsed items that present an unfavorable impression or represent extremely bizarre and unlikely symptoms.  This result suggests an element of exaggeration of complaints and problems.  Elevations in this range may be indicative of a "cry for help" or an extremely negative evaluation of oneself and one's life.  Some deliberate distortion of the clinical picture may also be present; the critical items should be reviewed to evaluate the possibility of malingering. (Tr. 269.)

Dr. Zimmermann's initial diagnosis was pain disorder associated with both psychological factors and general medical condition; major depression, single episode, moderate to severe, absent psychotic features; anxiety disorder, not otherwise specified.  He recommended anti-depressant medication and psychotherapy. (Tr. 270.)

Plaintiff was not seen again by Dr. Zimmermann until December 30, 2005, approximately 6 months after his initial visit. (Tr. 254.)  At this visit, Dr. Zimmermann encouraged plaintiff to move toward some meaningful employment.  Plaintiff was treated by Dr. Zimmermann about every two weeks from January 12, 2006 to May 9, 2006, missing two appointments with no explanation.  During the months of February and April plaintiff had some bad moments, crying and feeling anger toward his situation.  Dr. Zimmermann, again, however, encouraged plaintiff to be more active within the limits set by Dr. Clark (plaintiff's pain management physician) and to find ways to modify physical activity so that he can do more things he enjoys. (Tr. 252.)  Plaintiff tried a number of activities such as fishing, horseback riding, and flying remote controlled airplanes, but stated that he could not do any of these activities due to his pain. Plaintiff constantly complained of pain at his visits with

14

Dr. Zimmermann, still Dr. Zimmermann encouraged meaningful activity. (Tr. 249-251.) Plaintiff was then seen again by Dr. Zimmermann on August 28, 2006.  At this appointment, plaintiff was in a more positive mood and could do some walking without his cane.  Plaintiff stated that he found a new hobby in flying remote-controlled airplanes and that he continues to exercise.  Dr. Zimmermann finds plaintiff's overall mood has improved. (Tr. 248.)[21]  This is the last entry in Dr. Zimmermann's records until his letter to plaintiff's counsel on December 8, 2006.   In this letter, Dr. Zimmermann opines that his initial diagnosis is unchanged and that he could not recommend that plaintiff return to work as his depression remains at a clinically debilitating level. (Tr. 294.)[22]  This letter, however, is conflicting with a Psychological Evaluation performed on December 19, 2006, by V. Gleason and signed by Dr. Zimmermann.  This evaluation (completed just eight days after Dr. Zimmermann's letter to plaintiff's counsel) stated that plaintiff drove himself to the evaluation (a 20 minute trip), and reported that his activities of daily living included caring for his own hygiene and dressing himself, making simple meals, using the telephone and common household appliances, and was able to use basic tools.  The evaluation goes on to indicate that plaintiff was able to clean up after himself, retains age-appropriate monetary skills, moves about by driving himself, and when he is physically able, goes fishing, visits people, goes to church,

---

[21]   Bolton v. Apfel, 237 F.3d 632 (5th Cir. 2000)("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."), citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988) citing, Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986)).

[22]   The Fifth Circuit has held that declarations stating that a claimant is disabled or unable to work are not determinative because resolution of the ultimate issue regarding disability is reserved by statute to the Commissioner. Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989); Barajas v. Heckler, 738 F.2d 641, 645 (5th Cir. 1984); see also, 20 C.F.R. § 404.1527(e) (medical source opinions on issues reserved to the Commissioner are improper).

and flies a radio-controlled airplane. (Tr. 296.)[23]  The evaluation also assessed plaintiff's IQ

level, which was found to be in the low average range and a global assessment of functioning

(GAF) score of 65 (Tr. 297.)[24]  This assessment does not portray the individual described in

Dr. Zimmermann's December 8, 2006, correspondence to plaintiff's counsel, indicating he

was unable to work because his depression was at a debilitating level.[25]  The ALJ states:

"[T]hough Dr. Zimmermann also suggested on December 8, 2006 that the claimant is not

able to work, his assessment of the claimant's GAF score contradicts that conclusion." (Tr.

30.)  Based on the above evidence, the ALJ properly found that while plaintiff suffered from

a severe mental impairment, the impairment is not of the severity to meet a listed impairment.

 Again, plaintiff fails to discuss the meeting of any specific listing with regard to his mental

impairment.

        Plaintiff further argues that the ALJ never discussed the December 19, 2006 Medical

Source Statement of Ability to Do Work Related Activities attached to Dr. Zimmermann's

psychological examination report.  The medical source statement indicated that plaintiff has

"moderate" limitation in understanding and remembering detailed instructions, making

---

   [23] Leggett v. Chater, 67 F.3d 558, 565 n.12 (5th Cir. 1995) (a claimant's activities may properly be considered by the ALJ when deciding disability status.).

   [24]  This GAF score is the same score assessed by Zahid Imran, MD, on August 1, 2004, during a psychiatric evaluation at Our Lady of the Lake Regional Medical Center. At this time Dr. Imran's diagnosis was dissociative disorder (not otherwise specified),and depressive disorder (not otherwise specified).  Dr. Imran further clarified with plaintiff that this diagnosis would probably not constitute disability that would give him benefits.(Tr. 130-131.)

   [25] A treating source's opinion is afforded "controlling weight," so long as the medical opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 1527(d)(d); see also, Leggett, supra, 67 F.3d at 566 (while the opinion of a treating physician is generally entitled to great weight, the ALJ may diminish its weight relative to other experts where the treating physician's opinion is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or where it is  otherwise unsupported by the evidence."

judgment on simple work-related decisions, and responding appropriately to changes in routine work settings. (Tr. 298-99.)  However, the form defined "moderate" limitation to mean that an individual could still function satisfactorily. (Tr. 298.)  The statement also included a check in the block indicating that plaintiff would have a "marked" limitation in responding appropriately to work pressures in usual work-settings. (Tr. 299.)  The form defined "marked" limitation to mean that an individual's ability to function was seriously limited, but not precluded. (Tr. 298.)  It should also be noted that Dr. Zimmerman writes on the medical source statement, both on pages 2 and 3, that the medical and/or clinical findings supporting his assessments can be found in his Psychological Evaluation. (Tr. 298-299.)  Further, while the ALJ does not specifically name the medical source statement in his decision,[26] he does incorporate the findings and assessments in plaintiff's RFC, by placing the following limitations: he is able to perform unskilled, entry level work commensurate with his intellectual capacity and consistent with unskilled occupations.  Further, the assessments of "moderate" and "marked" for the above categories of functioning, as defined by the form itself, do not preclude plaintiff from performing some substantial work.  Accordingly, plaintiff's argument that the ALJ did not consider his mental impairment when determining his RFC cannot stand.

    As stated above, the ALJ also considered plaintiff's testimony in determining his RFC, but found that inconsistences in plaintiff's reporting tended to undermine his

---

[26] *See*, <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994) (The ALJ is not required to explicitly discuss all the evidence that supported the decision or was rejected.)

credibility.  Plaintiff testified at the October 2, 2006 hearing that he could not perform household chores, stopped going to church, could not drive, and could not fly his remote control airplane, all due to the pain he was experiencing. (Tr. 308,  309, 312, 314.)  Again, this characterization of plaintiff's activities of daily living dramatically differs from what he reported during the December 19, 2006 Psychological Evaluation as discussed in detail above.  (Tr. 296.)  The Fifth Circuit has held that the judgment as to the credibility of testimony is the sole province of the ALJ.[27]  The ALJ's credibility determination is entitled to considerable deference.[28]  Furthermore, the regulations provide that a claimant's subjective complaints are considered credible only to the extent that the record evidence supports them. After considering both the plaintiff's testimony and complaints, and the record as a whole, the ALJ found the plaintiff's credibility to be lacking and the Court will give considerable deference to that determination.

As the procedural history sets forth, the ALJ determined that plaintiff had the residual functional capacity to perform at the sedentary to light work level, i.e., to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday; his ability to push and pull is limited by the weight he is able to lift and carry; and he is able to perform unskilled, entry level work commensurate with his intellectual capacity and consistent with unskilled occupations.  The ALJ made this determination after considering all of plaintiff's symptoms, the medical evidence regarding

---

[27] Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

[28] Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

plaintiff's spinal and cervical impairments, the psychological medical evidence regarding plaintiff's mental impairment, plaintiff's own testimony, and the evidence contained in the record as a whole.  The Court finds that the ALJ's RFC determination allows for plaintiff's physical and mental impairments, and that the ALJ  followed the proper legal standards in making his RFC determination.

The ALJ went on to find that given the plaintiff's RFC and his age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, plaintiff was not able to perform his past relevant work as a truck driver, but could perform other work in the national economy.  Plaintiff does not discuss this aspect of the ALJ's decision in his appeal, but does argue that the ALJ was in error in determining his RFC.

Finally, the plaintiff claims that the ALJ engaged in "picking and choosing" the evidence when determining plaintiff's RFC.  Considering all of the above evidence and discussion, this argument is without merit.

The Court finds, therefore, that the ALJ followed the proper legal standards in assessing plaintiff's RFC, and that the record contains substantial evidence to support both that determination and the ALJ's final decision that plaintiff is not disabled.

## RECOMMENDATION

Accordingly, it is recommended that the Commissioner's decision be affirmed and that the plaintiff's appeal be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, July 8, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**